**ALAN G. NOVODOR, ESQ. (S.B. #49681)**
**LAW OFFICES OF ALAN G. NOVODOR**
11835 W. Olympic Boulevard, Suite 1125 E
Los Angeles, California 90064-5001
Telephone: (310) 479-9387
Facsimile: (310) 479-9388
novodor@msn.com

**PHILIP H. HECHT** (DC Bar No. 333286)
**LAW OFFICE OF PHILIP H. HECHT PLLC**
2855 Tilden Street, NW
Washington, DC 20008
Telephone: (202) 686-5073
Facsimile: (202) 242-0694
phil@phechtlaw.com

*Attorneys for Plaintiff RBR Meat Co., Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RBR MEAT COMPANY, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> LLOYDS OF LONDON SYNDICATE 4020 ARK <br><br> and <br><br> ARK SYNDICATE MANAGEMENT, LTD., <br><br> Defendants. | CASE NO. 2:14-cv-06399 <br><br> **COMPLAINT FOR:** <br><br> 1. **DECLARATORY JUDGMENT** <br> 2. **BREACH OF CONTRACT** <br> 3. **BREACH OF FIDUCIARY DUTY** <br> 4. **EXEMPLARY DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, RBR MEAT COMPANY, INC. ("RBR"), by and through its attorneys, hereby files this Complaint against Defendants, LLOYDS OF LONDON SYNDICATE 4020 ARK and ARK SYNDICATE MANAGEMENT, LTD. (collectively, "Ark"), and respectfully alleges as follows:

**INTRODUCTION**

1.  This is an action for declaratory judgment brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et. seq., for damages for breach of contract, for breach of the insurer's duty of good faith and fair dealing in claims handling, for exemplary damages, and for further necessary and appropriate relief.

-1-

2. This action is against Ark for its improper denial of insurance benefits under a Contamination Products Insurance policy ("Policy") that RBR purchased and to which the syndicate members of Ark each individually subscribed.

3. RBR is a family-owned producer of high-quality food products in the United States.

4. RBR suffered substantial monetary losses as a result of events causing USDA's Food Safety and Inspection Service's ("FSIS") to initiate a Notice of Suspension to Rancho Feeding Corporation ("Rancho") that resulted in RBR's recall of approximately 6.3 million pounds of adulterated beef products ("Contamination Incident").

5. RBR timely sought coverage from Ark under the Policy for its losses.

6. Ark has wrongfully denied RBR's claim for its losses in direct contravention of the plain meaning of the terms and conditions of the Policy and controlling law.

7. Ark's denial of coverage for RBR's claim also breached Ark's covenant of good faith and fair dealing in claims handling and entitles RBR to recover exemplary damages, as well as its attorneys' fees and costs in bringing this action.

**PARTIES**

8. RBR Meat Company, Inc. is a California corporation having its principal place of business at 5151 Alcoa Avenue, Vernon, CA 90058.

9. Upon information and belief, Defendant Lloyds of London Syndicate 4020 Ark is an association of underwriters existing under the laws of the United Kingdom having its principal place of business at Lloyd's, One Lime Street, London, EC3M 7HA, United

Kingdom. Upon information and belief, Defendant Lloyds of London Syndicate 4020 Ark is licensed to do business, and does business, through its agents in California.

10. Upon information and belief, Defendant Ark Syndicate Management, Ltd. is a limited liability company existing under the laws of the United Kingdom having its principal place of business at 30 Fenchurch Ave., London, EC3M 5AD, United Kingdom. Upon information and belief, Ark Syndicate Management, Ltd. is licensed to do business, and does business, through its agents in California.

## JURISDICTION AND VENUE

11. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties, and the amount in controversy, as set forth in more detail below, is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

12. Plaintiff brings this action pursuant to 28 U.S.C. § 2201 and Rules 3 and 57 of the Federal Rules of Civil Procedure.

13. This court has personal jurisdiction over Ark because Ark's business activities are conducted within the territorial confines of this judicial district and division. Moreover, the Policy contains a Service of Suit Clause in which Ark contractually agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States.

14. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(a) and (b) because this is a civil action and a substantial part of the events giving rise to this claim occurred in this district.

# FACTUAL BACKGROUND

**The Policy**

15. Ark sold RBR Policy No. R1265141 for the period December 22, 2012 – December 22, 2013. The period of the Policy was extended by endorsement to July 1, 2014.

16. A true and correct copy of the Policy is attached as Exhibit 1.

17. The Policy is a standard-form policy drafted by the insurance industry and/or contains language drafted by Ark.

18. RBR was obligated to pay a premium of $63,500.00 as set forth in the Policy, and an additional premium of $33,288.00 for the extended policy period. RBR paid these amounts in full.

19. In exchange for the premium paid, Ark contractually agreed in the Insuring Agreement of the Policy "to reimburse [RBR] . . . for all or any Loss, namely all or any Pre-Recall Costs, Recall Costs, Customer Recall Costs, Customer Loss of Profit, Approved Consultants, Increased Cost of Working, Rehabilitation Costs, Incident Response Costs, and Loss of Gross Income, caused by or resulting from any Insured Event first discovered during the Period of Insurance and notified to [Ark] in accordance with the terms of this Policy." See Ex.1 at p. 3.

20. The Policy defines "Accidental Product Contamination," in relevant part, as:

(a) an unintentional, inadvertent error including an error in design or specification made by the Insured;

or

(b) the introduction of an ingredient or component supplied by a third party that is contaminated or unfit for its intended purpose;

> During manufacture, blending, mixing, compounding, packaging, labeling including the instructions for use, storage or distribution of any Insured Products, or storage of the Insured Products while in the care or custody of the Insured,
>
> Provided that in the event of its consumption or use as intended it would lead or has led to bodily injury, sickness or disease of any person, animal or livestock physically manifesting itself within 365 days of its consumption or use, or would lead to or has led to physical property damage to tangible property owned by a third person[.]

**See Ex. 1 at p. 9.**

21. The Policy's limit of liability for Accidental Product Contamination is $5 million.

22. The Policy defines "Governmental Recall" as:

> the recall of the Insured's Products which has been initiated;
>
> (a) voluntarily by the Insured as a result of a recommendation, or on the advice of the United States Food and Drug Administration, United States Department of Agriculture, Canadian Food Inspection Agency or other Regulatory Body, or
>
> (b) following a mandatory recall order by a Regulatory Body empowered by legislation provided both (a) and (b) are as result of an investigation solely in response to and as part of the governance and compliance with food safety regulations and has been classified as a Class I or Class II recall.

**See Ex. 1 at p. 9.**

24. The Policy defines "Loss" as "Pre-Recall Costs, Recall Costs, Retained Consultants, Increased Costs of Working, Rehabilitation Costs, Incident Response Costs, or loss of Gross Income, each as described in Clause 1.3." **See Ex. 1 at p. 10.**

## The Contamination Incident

25. Between January 1, 2013 and January 10, 2014, RBR purchased approximately 6.3 million pounds of beef products from Rancho in Petaluma, California.

26. Between January 1, 2013, and January 10, 2014, RBR processed and sold approximately 6.3 million pounds of the Rancho beef products to its wholesale customers, who, in turn, processed and sold products incorporating the Rancho beef products to their own customers.

27. On January 14, 2014, FSIS issued a Notice of Suspension to Rancho, stating that FSIS was withholding marks of inspection and suspending the assignment of inspectors at Rancho's Petaluma facility in accordance with Title 9 Code of Federal Regulations, Part 500.3(a)(1) because that facility produced and shipped adulterated and misbranded beef products.

28. The Notice of Suspension was issued due to Rancho's failure to present the beef products for ante mortem and post mortem inspection, as required by 21 U.S.C. 603(a) and 21 U.S.C. 604 of the Federal Meat Inspection Act ("FMIA").

29. The Notice of Suspension stated:

> This product is considered adulterated because it is unfit for human food as defined by 21 U.S.C. 601(m)(3) of the FMIA. As such, these products cannot enter commerce because they have not been inspected and found to be not adulterated and capable for use as human food as required under 21 U.S.C. 604 of the FMIA. In addition, the products were misbranded pursuant to 21 U.S.C. 601(n)(1) in that the labels represented that the products had been inspected and passed, when, in fact, they had not been inspected and passed.

30. As a result of Rancho's failure to prevent the production and shipment of adulterated beef products into commerce, Rancho initiated a voluntary Class I recall of approximately 8,742,700 pounds of such products, including all of the adulterated beef products it had sold to RBR.

31. FSIS' definition of a Class I recall is: "This is a health hazard situation where there is a reasonable probability that the use of the product will cause serious, adverse health

consequences or death." FSIS Directive 8080.1 Revision 7 (9/9/13).

32. Rancho's Class I recall notice bears the legend "Health Risk: High" and states that the recall was being conducted "because it processed diseased and unsound animals and carried out these activities without the benefit or full benefit of federal inspection."

33. Rancho immediately notified RBR of its Class I recall of the adulterated beef products. RBR promptly commenced its own Class I recall of approximately 6.3 million pounds of adulterated beef products it had purchased from Rancho, which required RBR to notify 57 of its wholesale customers. If RBR had elected not to commence its own Class I recall of the adulterated beef products it purchased from Rancho, RBR could have been subjected to civil claims and even criminal sanctions by FSIS.

34. As a result of its recall of adulterated beef products it purchased from Rancho, RBR incurred significant Losses, including but not limited to Pre-Recall Costs, Recall Costs, Customer Recall Costs, Customer Loss of Profit, Approved Consultants, Increased Cost of Working, Rehabilitation Costs, Incident Response Costs, and Loss of Gross Income, all as defined in the Policy. RBR currently estimates that its Losses will exceed the total limits of the Policy for Accidental Product Contamination and Governmental Recall.

**RBR's Insurance Claim**

35. On February 10, 2014, RBR sent Ark a document titled "Acord Property Loss Notice," which notified Ark of the Contamination Incident and satisfied the notice provision in the Policy.

36. The Contamination Incident satisfies the Policy's coverage provision for Accidental Product Contamination. Specifically, RBR's processing and sale of the adulterated beef products it purchased from Rancho constitutes "the introduction of an

−7−

ingredient or component supplied by a third party that is contaminated or unfit for its intended purpose . . . during manufacture, blending, mixing, compounding, packaging, labelling including the instructions for use, storage or distribution of any Insured Products," as set forth in the Policy's definition of Accidental Product Contamination. The Contamination Incident also satisfies the Policy's requirement that "consumption or use as intended [of the adulterated beef products] would lead or as has led to bodily injury, sickness or disease of any person, animal or livestock physically manifesting itself within 365 days of its consumption or use, or would lead to or has led to physical property damage to tangible property owned by a third person."

37. The Contamination Incident satisfies the Policy's coverage provision for Governmental Recall. Specifically, RBR's recall of the adulterated beef products it purchased from Rancho constitutes "the recall of Insured Products which has been initiated; (a) voluntarily by the Insured as a result of a recommendation, or on the advice of the United States Food and Drug Administration, United States Department of Agriculture, Canadian Food Inspection Agency or other Regulatory Body," as set forth in the Policy's definition of Governmental Recall.

**Ark's Denial of RBR's Insurance Claim**

38. On March 19, 2014, Ark notified RBR that it had retained Charles Taylor Adjusting ("CTA") to obtain information concerning the Contamination Incident, and requested that RBR continue to cooperate with CTA to "allow[ ] Ark to come to a decision on whether or not coverage applies for this loss." Ark also reserved its rights with respect to coverage under the Policy.

39. On May 5, 2014, Ark sent a second reservation of rights to RBR that thanked RBR for its cooperation with CTA but notified RBR that "Ark requires further documentation to be able to confirm coverage for this Recall." The May 5, 2014 reservation of rights also

–8–

stated:

> In order that we may proceed without delay, should coverage be confirmed at a later date, Ark will instruct a forensic accountant to review and approve the claimed loss under the Policy. Please offer this firm your full cooperation as you have with CTA. Please note, however, that Ark's appointment of a forensic accountant is solely designed to expedite the claims process and is not a concession by Ark that coverage for the claim, in fact, exists.

40. Since providing notice of the Contamination Incident to Ark, RBR has responded to a Request for Information containing 32 separate requests, and has continued to provide information to Ark's forensic accountant and CTA about the facts and circumstances of Contamination Incident, RBR's actions with respect to its own recall, and the consequent financial costs to RBR.

41. On June 4, 2014, RBR asked Ark to withdraw its reservation of rights and acknowledge coverage for the Contamination Incident under the Policy's Accidental Product Contamination and Governmental Recall provisions.

42. On June 17, 2014, Ark denied coverage for the Contamination Incident under the Policy's Accidental Product Contamination provision, stating that Ark did not have "any evidence that the beef is actually contaminated, or evidence that it is actually unfit for its intended purpose" and that "there is no possibility of bodily injury, sickness or disease of a person, or physical damage to tangible property owned by a third party."

43. Also on June 17, 2014, Ark denied coverage for the Contamination Incident under the Policy's Governmental Recall provision, stating that RBR

> has provided no evidence, to date, to show that its decision to recall the product was based on any direct contact with the USDA or a recommendation from the USDA to [RBR] to recall the product. Indeed, from the evidence made available, it seems that the decision to recall the product voluntarily was taken following unsubstantiated allegations of a quality issue received from Rancho. As such, it appears to Ark that the definition of Governmental Recall is not satisfied.

-9-

**COMPLAINT**

44. On June 23, 2014, RBR asked Ark to rescind its denial of coverage for the Contamination Incident under the Accidental Product Contamination and Governmental Recall provisions of the Policy.

45. On July 3, 2014, Ark reiterated its denial of coverage for the Contamination Incident under the Accidental Product Contamination and Governmental Recall provisions of the Policy.

46. Ark has continued to deny coverage for the Contamination Incident under the Accidental Product Contamination and Governmental Recall provisions of the Policy and has refused to pay any amount to RBR for its Losses under the Policy.

## COUNT I: DECLARATORY JUDGMENT

47. RBR repeats and re-alleges the allegations of paragraphs 1 through 46 as if set forth fully herein.

48. The Policy sets forth the terms and conditions of the insurance contract between Ark and RBR, including the Insuring Agreement and the definitions of Accidental Product Contamination and Governmental Recall.

49. The Contamination Incident triggered the Policy's Accidental Product Contamination coverage because the consumption or use as intended of the adulterated beef products that RBR purchased from Rancho "would lead . . . to bodily injury, sickness or disease of any person . . . or would lead to or has led to physical property damage to tangible property owned by a third person."

50. The Contamination Incident triggered the Policy's Governmental Recall coverage because RBR initiated its own voluntary recall of the adulterated beef products it

purchased from Rancho "as a result of a recommendation, or on the advice of the United States Food and Drug Administration . . ."

51. Ark has not compensated RBR for its covered Losses arising out of the Contamination Incident under either the Accidental Product Contamination or Governmental Recall provisions of the Policy.

52. An actual and justiciable controversy presently exists between Ark and RBR regarding the meaning of the Policy and Ark's obligation to reimburse RBR for Losses arising out of the Contamination Incident.

53. RBR is entitled to a declaration that Ark is obligated to reimburse RBR's Losses, as defined in the Policy, in full, subject only to the separate limits of liability for Accidental Product Contamination and Governmental Recall in the Policy.

## COUNT II: BREACH OF CONTRACT

54. RBR repeats and re-alleges the allegations of paragraphs 1 through 46 as if set forth fully herein.

55. The Policy constitutes a lawfully binding contract between Ark and RBR.

56. RBR has paid its premium in full for the Policy.

57. RBR has satisfied all other conditions precedent to coverage under the Policy.

58. As a result of the Contamination Incident, RBR has suffered substantial Losses that are covered by the Policy.

59. RBR has demanded performance under the Policy.

60. Ark has improperly and unilaterally breached the Policy by failing to reimburse RBR's covered Losses arising from the Contamination Incident.

61. As a direct and proximate result of Ark's breach of its obligations under the Policy, RBR has suffered damages, and may suffer additional damages in the future.

**COUNT III: BREACH OF THE INSURER'S COVENANT OF GOOD FAITH AND FAIR DEALING IN CLAIMS HANDLING**

62. RBR repeats and re-alleges the allegations of paragraphs 1 through 46 as if set forth fully herein.

63. As the insurer under the Policy, Ark owes RBR a special duty of good faith and fair dealing.

64. Ark has breached its duty of good faith and fair dealing by, among other actions, each of the following: unreasonably delaying its decision to accept or deny RBR's claim under the Policy; demanding RBR's cooperation with Ark's investigation of the Contamination Incident while continuing to deny coverage under the Policy; and by continuing to deny coverage under the Accidental Product Contamination and Governmental Recall provisions of the Policy even though the Notice of Suspension and FSIS regulations concerning recalls show beyond dispute that RBR's own recall triggered coverage under those provisions.

65. RBR has performed all of its contractual obligations under the Policy. Specifically, RBR gave Ark prompt notice of its claim, provided Ark and its agents with the information necessary to make its claim decision, and fully cooperated with Ark's investigation of the claim.

66. Despite RBR's cooperation, on March 19, 2014, Ark first indicated to RBR that Ark did not have sufficient information to determine whether RBR's claim was covered under the Policy, and on May 5, 2014, Ark stated that it "require[d] further documentation to be able to confirm coverage for this Recall."

67. Ark's unreasonable and prolonged investigation of RBR's claim, as well as its continuing refusal to accept coverage for the claim under the Accidental Product Contamination and Governmental Recall provisions of the Policy, demonstrate Ark's intent to oppress RBR and a conscious disregard of RBR's rights under the Policy.

68. Ark's conduct has unfairly frustrated the agreed common purposes underlying the Policy, and has disappointed RBR's reasonable expectations under the Policy, thereby improperly depriving RBR of its benefits under the Policy.

## COUNT IV: EXEMPLARY DAMAGES

69. RBR repeats and re-alleges the allegations of paragraphs 1 through 46 as if set forth fully herein.

70. RBR is informed and believes that Ark's investigation of the Contamination Incident is not based on its good faith desire to assess the validity of RBR's claim for coverage under the Accidental Product Contamination and Governmental Recall provisions of the Policy, but rather is intended primarily to delay its coverage decision and payment of RBR's claim.

71. By intentionally delaying its coverage decision and refusing to accept RBR's claim under the Accidental Product Contamination and Governmental Recall provisions of the Policy, Ark has consciously and intentionally breached the special duties of good faith and fair dealing that it owes RBR by consciously disregarding RBR's interests and rights to

-13-

**COMPLAINT**

payment under the Policy, and by instead putting its own interests before those of RBR.

72. Ark has acted maliciously, and with intent to oppress, and in conscious disregard of RBR's rights under the Policy, and has in fact unfairly frustrated the agreed common purposes underlying the Policy, disappointing RBR's reasonable expectations under the Policy, and deprived RBR of its benefits under the Policy.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, RBR respectfully requests judgment as follows:

a. With respect to Count I, an order declaring that Ark is obligated to reimburse RBR, subject only to the separate limits of liability for Accidental Product Contamination and Governmental Recall in the Policy, for RBR's Losses as more particularly described in the Policy.

b. With respect to Count II, a ruling that Ark breached its contract with RBR by denying coverage under the Accidental Product Contamination and Governmental Recall provisions of the Policy, and an order requiring Ark to pay damages to RBR in an amount to be established at trial.

c. With respect to Count III, a ruling that Ark breached its implied covenant of good faith and fair dealing in claims handling, in failing to investigate the claim in good faith and to complete its claim investigation within a reasonable period, and in unreasonably delaying acknowledgment of its coverage obligations to RBR.

d. With respect to Count IV, a ruling that Ark acted maliciously, with an interest to oppress, and in conscious disregard of the rights of RBR by intentionally breaching its implied covenant of good faith and fair dealing in claims handling, in failing to investigate RBR's claim in good faith, and in unreasonably delaying its acknowledgment of its coverage obligations to RBR.

LAW OFFICES OF ALAN G. NOVODOR
11835 W. Olympic Boulevard, Suite 1125 E
Los Angeles, California 90064-5001
Telephone: (310) 479-9387
Facsimile: (310) 479-9388

1  e. With respect to Count IV, an award of exemplary damages in an amount to be determined at trial.

2  f. With respect to each Count, separately and independently, an award of RBR's attorneys' fees and costs in bringing this action.

3  g. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, RBR requests a jury trial in this proceeding.

DATED: August 14, 2014

LAW OFFICES OF ALAN G. NOVODOR

By: / s / Alan G. Novodor

Alan G. Novodor (CA Bar No. 49681)
11835 West Olympic Boulevard, Suite 1125 East
Los Angeles, CA 90064
(310) 479-9387 Office
(310) 479-9388 Facsimile
novodor@msn.com

and

Philip H. Hecht (DC Bar No. 333286)
LAW OFFICE OF PHILIP H. HECHT PLLC
2855 Tilden Street, NW
Washington, DC 20008
(202) 686-5073 Office
(202) 242-0694 Facsimile
phil@phechtlaw.com

*Attorneys for Plaintiff RBR Meat Company, Inc.*

**COMPLAINT**